## Case No. 1,271.

### The BELLE.

[6 Ben. 287.] [1]

District Court, E. D. New York. Dec. Term, 1872.

ADMIRALTY—PLEADINGS—SEAMAN'S WAGES.

An admission, in the answer to a libel for seaman's wages, that the seaman shipped for the voyage and performed the service described in the libel, though coupled with a denial that any amount is due to him, and an allegation that the seaman was guilty of smuggling, by reason of which the vessel was subject to penalties and the seaman forfeited his wages, is sufficient, in the absence of evidence, to entitle the seaman to a decree for the amount of his wages.

In admiralty. This was a libel by John Armstrong for seaman's wages. The libel alleged that Armstrong shipped as mate on the vessel, and signed articles for a specified voyage at $50 a month, and served on board from January 7th, 1872, to June 3d, 1872, when he was discharged, and there was due him from the vessel $195, payment of which had been demanded and refused. The answer admitted these allegations, except that it denied that anything was due to the libellant. It further alleged that Armstrong, while he was mate, smuggled segars on shore from the vessel, whereby she became subject to penalties, by which conduct he forfeited his wages. The case was submitted on the pleadings. [Decree for libellant.]

Wilcox & Hobbs, for libellant.

Beebe, Donohue & Cooke, for claimant.

## Case No. 1,272.

### The BELLE.

[Blatchf. Pr. Cas. 294.] [2]

District Court, S. D. New York. Dec. Term, 1862.

PRIZE—EVIDENCE OF VIOLATION OF BLOCKADE.

The vessel on her voyage next preceding the one on which she was captured had violated the blockade. She was laden and virtually owned by parties notoriously actively concerned dur-

ing the war in carrying on an illicit trade with the blockaded ports of the enemy. Her master and mate were residents of the enemy country, and were employed on the voyage at the instant of its commencement. There is no proof of the bona fide purchase of the vessel by her neutral claimant from her enemy owner. Although her clearance was from Nassau for Philadelphia, there is no written evidence in her papers that she was put upon or attempted to pursue that voyage. Vessel and cargo condemned.

[See The Peterhoff, Case No. 11,024, reversed in part in 5 Wall. (72 U. S.) 28; The Minna, Case No. 9,634.]

[In admiralty. Proceedings to condemn and forfeit the schooner Belle and cargo. Decree of condemnation and forfeiture.]

BETTS, District Judge. The acting British consul for this port intervenes and answers, and claims against the libel filed in this suit against the vessel, and takes issue thereon. When the cause was called for hearing, the counsel for the libellants read the pleadings and proofs brought into court, and the counsel for the claimants entered a formal protest against the jurisdiction of the court and the liability of the vessel and cargo to proceedings in prize, on the ground that they were neutral property, belonging to English subjects. The libel was filed May 17, 1862, and the claim July 17. The trial was had December 2, thereafter. The vessel had on board, when captured, a certificate of registry, dated at Nassau, April 15, 1862, issued to George D. Harris, of Nassau, a merchant, stating that she was foreign built, at Charleston, South Carolina, in 1845; also, a shipping agreement with the master and crew, made at Nassau in April, 1862, "from the port of Nassau to ——, and back to Nassau;" also, a clearance from the port of Nassau to Philadelphia, with a cargo of three hundred and twenty sacks of salt, fifteen bags of pepper, and forty boxes of soap, dated April 16, 1862; bills of lading of the salt and soap shipped by Henry Adderly & Co., of Nassau, to Philadelphia, to order or assign, April 19; and a letter of advice from Adderly & Co., of the same date, addressed to W. S. Stockman, Philadelphia. The bills of lading refer to the charter-party as governing the shipment. That document was not produced from the vessel with the ship's papers, nor was any log-book, invoice, or manifest of the cargo.

The vessel was captured by the United States steamer Uncas, April 26, 1862, at sea, while approaching the coast of South Carolina, off Cape Romaine, in nineteen fathoms of water. The master was an English subject by birth; he and his family had been residents in Charleston for several years. He joined the vessel at Nassau on the 17th of April. The crew consisted of six persons in all, mostly Italians. The mate was an American, and, by the printed constitution of an artillery company at Georgetown. South Carolina, found on board of the prize, marked with pencil as belonging to him, he appears

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Reported by Samuel Blatchford, Esq.]

to have been a member of that company, and, as such, necessarily a resident of South Carolina. The master, on his examination, evidently presses his statements strenuously, to maintain that his voyage was one to Philadelphia, and nowhere else; but his representations as to his destination are contradicted by the shipping articles, and his assumed ignorance of the previous employment of the vessel is placed in doubt by his admission that he had heard at Nassau that, on her voyage next preceding the one on which she was captured, she arrived at Nassau from Charleston, with a cargo of cotton. He says that he took charge of her on the 17th of April, and had only known her two or three days previously; and that he understood that Mr. Harris was connected in some way in business with Adderly & Co. No proof is furnished that a bill of sale was given to Harris on the alleged purchase of the vessel, or that any consideration money was actually paid. The existence of the war and of the blockade of the southern coast was notorious at the time, as stated by the witnesses. The vessel was captured west of the Gulf Stream, making towards the South Carolina coast, off Cape Romaine, within sounding, and, as the master supposes, fifty miles from the cape. The circumstances in evidence raise impressions strongly inculpating the motives and movements in the voyage.

1. The vessel had just come into the port of Nassau from an evasion of the blockade of Charleston, bringing with her a guilty cargo.

2. She was laden and virtually owned by parties notoriously actively concerned during the war in carrying on an illicit trade with that port and the southern blockaded ports from and to Nassau.

3. The master and mate were residents of Charleston or its vicinity, and had been taken up and employed on the voyage in question at the instant of its commencement.

4. There is no proof of the lawful transfer of the vessel from an enemy ownership, nor indeed of any actual sale or delivery of her on a bona fide purchase.

5. There was no written evidence in the ship's papers that she was put upon or attempted to pursue a voyage to the port of Philadelphia.

A decree of condemnation and forfeiture of the vessel and cargo is ordered.